## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

| | | |
|---|---|---|
| ETHELVINA CAVAZOS, | § | 'AUG – 1 2008 |
| | § | |
| Plaintiff, | § | Michael N. Milby, Clerk of Court |
| | § | By Deputy Clerk ⎰⎰⎰⎰⎰⎰⎰ |
| v. | § | CIVIL ACTION NO. B-06-058 |
| | § | |
| LINDA SPRINGER, DIRECTOR, | § | |
| U.S. OFFICE OF PERSONNEL | § | |
| MANAGEMENT, and THE UNITED | § | |
| STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

### OPINION & ORDER

BE IT REMEMBERED that on ~~July~~ *August* 1, 2008, the Court considered the following: Defendants' Motion and Memorandum in Support for Summary Judgment, Dkt. No. 20; [Plaintiff's] Response to the Defendants' Motion for Summary Judgment, Dkt. No. 23; [Plaintiff's] Supplemental Response to the Defendants' Motion for Summary Judgment, Dkt. No. 27; Defendants' Reply to Plaintiff's Summary Judgment Response, Dkt. No. 26; and [Plaintiff's] Response to the Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Dkt. No. 28.

In this employment discrimination case, Ethelvina Cavazos ("Plaintiff") alleges that her employers, the United States Office of Personnel Management and Linda Springer, in her official capacity as Director of the United States Office of Personnel Management (collectively "Defendants" or "OPM"), engaged in conduct that created a hostile work environment and constituted retaliation against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-3. Dkt. Nos. 1, 9. Defendants maintain that Plaintiff has failed to establish a prima facie case of retaliation because there is no evidence Plaintiff engaged in a protected activity prior to experiencing any alleged adverse employment action. Dkt. No. 20. Defendants ask the Court to grant summary

judgment in its favor. Id. Plaintiff's responses to Defendants' motion do not dispute the material facts that form the basis of this suit. Dkt. No. 23, at 1. Instead, Plaintiff avers that the actions she took did constitute a protected activity, and Defendants' argument must fail. Id. at 5.

## I.     Factual and Procedural Background

### A.     *Undisputed Facts*[1]

Plaintiff has been employed with the U.S. Office of Personnel Management San Antonio Service Section as a Test Administrator ("TA") since 1992. Dkt. No. 20, Exs. C, D. At the time the events giving rise to this suit occurred, TAs worked at various remote locations within their service sections and were responsible for administering written occupational qualification exams to individuals seeking federal employment. *Id.*, Ex. G. Specifically, the principal duties of a TA included maintaining test booklets and scoring keys, ensuring a proper testing environment and adequate testing facilities, conducting testing sessions, picking up and returning testing materials to and from the personnel management office, and processing answer sheets and attendance forms. *Id.* At the time relevant to the instant matter, Plaintiff's immediate supervisor was Leon Ramirez ("Ramirez"), Testing Services Manager, and Miguel Hernandez ("Hernandez"), Director of the San Antonio Service Section, was Plaintiff's second level supervisor. *Id.*, Exs. C, E, F. Plaintiff performed her TA duties throughout the Rio Grande Valley and South Texas area. *Id.* Ex. C.

On October 28, 2003, Plaintiff conducted a testing session in Harlingen, Texas. *Id.*, Ex. H at 2. Other TAs were also present during the session, including Helen Farmer

---

[1]Defendants' motion for summary judgment and accompanying exhibits include the most complete recitation of the underlying facts of this case. *See* Dkt. No. 20. Plaintiff's responses affirmatively state that she "does not dispute in any significant way the recitation of the facts as set forth in the Defendant's Motion for Summary Judgment," nor does Plaintiff dispute Defendant's account of the procedural history of this matter. Dkt. No. 23, at 1. Plaintiff only opposes any characterization of her employment with Defendant as anything less than a full time position. *Id.* However, the Court determines that this fact is not material to the instant summary judgment inquiry.

("Farmer"), Antonia "Toni" Gonzalez ("Gonzalez"), Rebecca Farias ("Farias"), and Phil Wozniak ("Wozniak"). *Id.* at 2–3. Near the end of the testing session, an incident occurred between Plaintiff and Farmer and was witnessed by the other TAs. *Id.* at 2. Ramirez learned of the incident on October 29, 2003 because Farmer had notified him via a telephone message that something had happened during the October 28th session. *Id.* Ramirez initiated contact with Plaintiff on October 29th, and they discussed the incident during a telephone conversation. *Id.* Ramirez told Plaintiff that he would speak with Farmer to hear her account of the incident, and then he would contact Plaintiff to give her an update on the situation. *Id.* On October 30, 2003, Plaintiff called Ramirez and asked whether he had spoken to Farmer about the incident. *Id.* Ramirez stated that he had not yet heard from Farmer, and he would call Plaintiff with an update once he had spoken to Farmer. *Id.*

On November 12, 2003, Plaintiff sent an email to Ramirez memorializing the conversations they had on October 28th and 29th. *Id.* Plaintiff's email also included a detailed account of the October 28th incident that had occurred between her and Farmer. *Id.* at 2–3. Plaintiff stated that she had approached Farmer and Gonzalez during the last ten minutes of a testing session to discuss a work memorandum. *Id.* at 2. Shortly after the conversation started, Farmer "verbally attacked" Plaintiff while Gonzalez witnessed the discussion. Plaintiff wrote that Farmer "rudely interrupted me by attacking me with such sternness and terrifying attitude." *Id.* Plaintiff claimed that Farmer "was well prepared to attack me. . . . [and] [s]he wasted no time in doing so." *Id.* Farmer proceeded to tell Plaintiff that Farmer had received "superior" and "outstanding" notes and ratings from supervisors such as Ramirez and Jo McWilliams. *Id.* Plaintiff stated in her email that she did not understand why Farmer was making these statements. *Id.* Plaintiff also stated that Farmer "refused to listen to" her. *Id.* Plaintiff "repeatedly asked [Farmer] to keep it down, [but] [Farmer] kept saying that [Plaintiff] was not an authority figure, and [Farmer] did not have to listen to anything [Plaintiff] had to say." *Id.* Plaintiff's email indicated that she "was mesmerized at that because [Plaintiff] ha[d] never claimed to be an authority figure." *Id.* Farmer "continuously pointed her finger to [Plaintiff]," "kept repeating that [Farmer] did not have to listen to anything [Plaintiff] had to say," and walked away "talking of how [Plaintiff]

was not in authority." *Id.* Plaintiff apologized to TA Gonzalez for Farmer's outburst, and Plaintiff "could see how frighten[ed] [Gonzalez], [Plaintiff], and other TAs were due to Farmer's outburst." *Id.*

After Farmer went to stand in the back of the testing room, Plaintiff walked toward her, and "whispered in her left ear, 'I would have never spoken to a superior the way you just did.'" *Id.* Farmer responded that she did not have to listen to Plaintiff. *Id.* When the examinees finished their tests, Farmer collected her testing material and returned to where Plaintiff was completing paperwork. *Id.* at 3. When Plaintiff asked Farmer to turn in the exam answer sheets, Farmer "refused . . . snapped . . . and said, in a loud voice, [']I'm not done with my work!'" *Id.* Plaintiff stated that she "whispered back to [Farmer] saying, 'Yes your work is done, thank you and your [sic] excused., [sic] good-bye.'" *Id.* Farmer "continued to speak in a loud voice that she did not have to listen to [Plaintiff] nor follow [Plaintiff's] instructions." *Id.* Farmer told Plaintiff that Farmer was going to notify Ramirez that Farmer had refused to listen to Plaintiff. *Id.* Farmer also told Plaintiff that Farmer wished Plaintiff "wouldn't baby the TA's with notes of happy faces that Plaintiff had made." *Id.* Plaintiff's email stated that she "was using a sense of humor or to [sic] enlighten the TA's." *Id.* Farmer "continued yelling at [Plaintiff] that [Farmer's] work was not done." *Id.* Plaintiff "said, in a whisper, '[A]t least I now know you don't have a sense of humor'" and told Farmer, "[Y]our [sic] excused [Farmer], have a good day." *Id.* As Plaintiff walked from one end of the testing room to another, Farmer "followed [Plaintiff] with continuous threats that [Ramirez] would surely hear about this from [Farmer.]" *Id.* Plaintiff's email states that an examinee was still completing his answer sheet and heard Farmer's disruption, so Plaintiff again asked Farmer to "[p]lease stop the disruption, you're excused[,] please leave," but Farmer "did not exit the test room, but continued to verbally badger [Plaintiff] and [said] that [Farmer] hoped that [Plaintiff] would learn how to treat the TA's." *Id.*

Plaintiff's email also stated that the TAs work well together, get along fine, and "no one has a problem other than the problems [Farmer] creates for herself." *Id.* Plaintiff indicated that she had excused Farmer in order to "protect" herself and others from Farmer. *Id.* Plaintiff wrote that she "saw [Farmer's] angry rage. One that scared me [Plaintiff] and the other TA's. Our lives were at a high risk of danger." *Id.* Plaintiff also

declared that Farmer "has a major problem when someone corrects her or reminds her of her job duties. [Farmer] has snapped at all the TA's[.] [Farmer] has snapped at other TA's . . . . [Farmer]'s a compulsive complainer. Nothing satisfies her." *Id.* Plaintiff proceeded to state how Farmer had spoken rudely to another TA in order to get him to move his vehicle. *Id.* Plaintiff also declared that

> [b]efore the TA's left that day, they all told me that they would never want to work with [Farmer]. We all fear for our lives. [Farmer] lost her ability to control her anger and couldn't control her sarcasm. I [Plaintiff] too am scared of her, the way she victimized me. We were all victims of verbal abuse and harassed. . . . I [Plaintiff] have been with OPM for 12 [years], and I have never had a threat nor someone raise their voice to me as she did that day. None of us want to work with her ever again. . . . [Farmer] victimized all of us.

*Id.* Plaintiff concluded her email by stating that he hoped Ramirez would take "the necessary steps to resolve this problem immediately." *Id.*

Ramirez replied to Plaintiff via email. Dkt. No. 20, Ex. H at 1. Ramirez explained that he had spoken with Farmer about the incident, and Farmer had admitted that she "[blew] up, spoke out, was loud and understands this type of behavior cannot happen or continue during test sessions." *Id.* Ramirez wrote that he "managed to calm [Farmer] down and explained that this program was about to change drastically in the way we do business." *Id.* Ramirez further stated that

> [p]ersonnel matters will begin with all the Area Coordinators (formally Lead TA's) and they in turn will inform me. . . . We have begun the transition period and one major change is that all Area Coordinators are responsible for all scheduling assignments of all Test Administrators. These instructions were verbal per the Telcon on Friday, November 7, 2003. This is only one of many duties to their new job descriptions to come. I have spoken to Jo [McWilliams] about the situation in the Valley and have instructed her to take charge of all assignments effective immediately. This includes using [Farmer] or anyone needed for any large test sessions.

*Id.*

## B.   Procedural History

On December 11, 2003, Plaintiff initiated contact with an Equal Employment Opportunity Commission ("EEOC") counselor. Dkt. No. 20, Ex. I at 1. The counselor's

report documenting Plaintiff's EEO process indicates that an initial interview was conducted on December 18, 2003.  *Id.*  Plaintiff's stated bases for discrimination were listed as "Race/National Origin – Hispanic; Age – 54."  *Id.*  Her allegations of discrimination were stated as follows: "[Plaintiff] is a lead Test Administrator (TA).  On 10/28, [Plaintiff] had another TA act hostile and abusive towards her, while she was performing her normal oversight duties. [Plaintiff] feels she was harassed by the employee during an outburst that occurred in front of co-workers and applicants. [Plaintiff] notified her supervisor ([Ramirez]) the following day, 10/29, as noted in the attached email message from [Plaintiff]. [Plaintiff] said shortly after some of her duties were revoked."  *Id.*  Plaintiff's requested remedy was "to have no direct contact with the employee that was hostile towards her. [Plaintiff] wants her duties reinstated with no future retaliation."  *Id.* at 2.  This informal EEO process included a mediation session, but it did not produce a successful resolution to the matter. *Id.* at 2, 9.  On April 1, 2004, a letter was issued to Plaintiff stating that the informal process had concluded and informing her of the right to file a formal EEO complaint. Dkt. No. 20, Ex. A at 2.

Plaintiff filed a formal EEO complaint on April 14, 2004.  *Id.*  On September 27, 2004, a Final Agency Decision dismissed the complaint for failure to state a claim because Plaintiff "failed to set forth any facts that would show that she suffered an actionable injury under a disparate treatment theory or under a harassment theory."  *Id.* at 3.  Plaintiff appealed the decision, and the EEO Commission determined that Plaintiff's specific complaints alleging that she was relieved of certain duties implicated a term or condition of her employment.  Dkt. No. 20, Ex. B at 1.  The Commission remanded Plaintiff's complaint to the Agency.  *Id.*  After conducting an investigation and holding a hearing, an EEOC Administrative Judge granted OPM's Motion for Summary Judgment, and an OPM Final Agency Order adopted and implemented by the administrative judge's decision. Dkt. No. 9, Ex. 1.  Plaintiff was issued a letter advising her of her right to file a civil action in federal court.  *Id.*

**C.     The Instant Action**

Plaintiff filed the instant action on March 29, 2006.  Dkt. No. 1.  Plaintiff's complaint only generally states that she "was stripped of her responsibilities for having complained to her supervisor [Ramirez] about an incident she encountered at a test site with [Farmer] on October 28, 2003.  [Ramirez on November 12, 2003 informed Plaintiff of one major change to take effect immediately. . . .  Plaintiff was then retaliated against by her supervisors by being relieved of her duties and a hostile work environment being created to date."  Dkt. No. 9, at 3.  Plaintiff further states that "[a]s a result of the harassment and retaliation, Plaintiff filed an internal EEOC complaint.  As a direct result of filing the EEOC complaint, Plaintiff's job assignments were removed in large part and her evaluations were held to be Minimally Successful for one of the elements.  Plaintiff's supervisors became openly hostile towards her and she was retaliated against for filing a complaint with [OPM's] Equal Employment Office."  *Id.*  Plaintiff alleged that "these acts constitute violations of Title VII in that they constitute a hostile work environment and retaliation for filing a claim with the EEO of the Office of Personnel Management."  *Id.* at 4.

After a lengthy delay due to Plaintiff's failure to properly serve Defendants, the case resumed activity in November 2007.  After the summary judgment motion, responses, and replies were filed, the Court granted an unopposed motion by the Defendants to stay discovery pending a ruling on the instant motion.  Dkt. Nos. 30, 31.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC,* 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's*

*Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.   Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994).   Thus, the Court will not, *"in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists.  *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no opposition to the motion.  Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)).  If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708.  However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543.  The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891.  Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).  Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III.    Analytical Framework for Employment Discrimination Claims

Title VII of the Civil Rights Act of 1964 provides protection for employees and applicants for employment against discrimination on the basis of race, color, religion, sex, or national origin. *See generally* 42 U.S.C. § 2000e-1–2000e-17. Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999). These protections apply to employees of federal entities. 42 U.S.C. § 2000e-16. *See* Smith v. Office of Pers. Mgmt., 778 F.2d 258, 262 & n.1 (5th Cir. 1985). Discrimination may be proven through either direct or circumstantial evidence. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Claims of such discrimination based on circumstantial evidence are analyzed under the well-known burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). E.E.O.C. v. Omni Hotels Management Corp., 516 F.Supp.2d 678, 697 (N.D. Tex. 2007) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)). *See* Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001).

Under the framework, the plaintiff must first establish a prima facie case of discrimination. *Celestine*, 266 F.3d at 354. If the plaintiff can do so, the burden of production shifts to the defendant to demonstrate a legitimate, non-discriminatory or non-retaliatory reason for the challenged conduct. *Id.* at 355; *Omni Hotels*, 516 F.Supp.2d at 697. If the defendant can meet this requirement, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reason is merely pretextual. *Celestine*, 266 F.3d at 355; *Omni Hotels*, 516 F.Supp.2d at 697. If the plaintiff is able to establish this, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Celestine*, 266 F.3d at 355 (quoting Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000)). The *McDonnell Douglas* framework applies to both retaliation and hostile work environment employment discrimination claims. *See McCoy*, 492 F.3d at 556; LeMaire v. La. Dep't of Transp. and Dev., 480 F.3d 383, 388–89 (5th Cir. 2007); Thomas v. Norris, No. 1:07-CV-573, 2008 WL 859190, at *5 (E.D. Tex. Mar. 28, 2008) (citing Hayatavoudi v. Univ. of La. Sys. Bd. of Trustees, No. 00-30389, 2000 WL 1835143, at *3 (5th Cir. Nov. 27, 2000)).

## IV.    Analysis of Plaintiff's Retaliation Claim

In accordance with the *McDonnell Douglas* test, to survive summary judgment on a Title VII unlawful retaliation case, Plaintiff must first establish her prima facie case by showing that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57 (citing Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003)); *LeMaire*, 480 F.3d at 388.  An employee engaged in a protected activity if she "opposed any practice made an unlawful employment practice by" Title VII, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a); Grimes v. Tex. Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996).  To demonstrate that she participated in a protected activity under the opposition clause of § 2000e-3(a), an employee must show "that she had at least a 'reasonable belief' that the practices she opposed were unlawful."  Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996) (quoting Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1984)).  The participation clause of § 2000e-3(a) does not require such a reasonable belief. Martin v. Kroger Co., 65 F.Supp.2d 516, 555 (S.D. Tex. 1999) (citing Hashimoto v. Dalton 118 F.3d 671, 680 (9th Cir. 1997)).  Instead, the participation clause "provides broad protection" to an employee who has participated in Title VII proceedings. *Martin*, 65 F.Supp.2d at 555.

In the instant motion, Defendants contend that Plaintiff is unable to establish a prima facie case of retaliation because Plaintiff cannot show that she engaged in a protected activity at any point prior to the alleged adverse employment actions of which she complains. Dkt. No. 20, at 9–12. Defendants set forth two bases for their argument.

First, Defendants contend that Plaintiff's oral and written communications to Ramirez on October 29, 2003 and November 12, 2003 did not constitute participation in a protected activity because Plaintiff did not complain of any practice made unlawful by Title VII, nor did she complain that Farmer's actions were motivated by any discriminatory animus prohibited by Title VII. *Id.* at 11.  Defendants also maintain that there is no

-10-

evidence that Plaintiff had a good faith, reasonable belief that Farmer's actions were unlawfully discriminatory. *Id.*

Second, Defendants aver that although Plaintiff's action of contacting an EEO counselor qualifies as a protected activity under the participation clause of § 2000e-3(a), Plaintiff did not engage in that activity until December 11, 2003, which was after Plaintiff was allegedly "stripped" of some of her work responsibilities on November 12, 2003. *Id.* at 10. Thus, Defendants state there is no way the change in Plaintiff's duties could have been in retaliation for Plaintiff's initiation of the EEOC process, and Plaintiff cannot establish a causal nexus between her EEO communication and her change in work duties. *Id.*

## A.   *Whether Plaintiff's Actions Constituted Protected Activities under Title VII*

### i.   *Claim Under the Opposition Clause of §2000e-3(a)*

Plaintiff's responses to Defendants' arguments do not address whether she actually engaged in a protected activity by opposing a practice *made unlawful by Title VII.* Dkt. Nos. 23, 27, 28. Instead, her responses focus merely on whether her informal complaints to Ramirez may constitute protected activities per se. *Id.* Plaintiff cites *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006), for the proposition that "Plaintiff's complaint to her supervisor does in fact constitute a protected activity under the anti-retaliation provision of Title VII." Dkt. No. 23, at 2–4. In essence, Plaintiff maintains that because White was found to have engaged in a protected activity by complaining to her immediate supervisor of disparaging, gender-related remarks made by her co-workers, it follows that any complaint made by an employee to a supervisor constitutes a protected activity. *Id.* As additional support for her argument, Plaintiff cites cases finding that employees' informal complaints to employers qualify as protected activities under the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). Dkt. Nos. 27, 28.

It is well established that an employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful and the employee holds a good faith, reasonable belief of the

conduct's unlawfulness.  *See Burlington Northern*, 548 U.S. at 58.  Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute.  In *Watts v. Kroger Co.*, Watts alleged claims of sexual harassment and unlawful retaliation against her employer, Kroger Co. 170 F.3d 505, 507 (5th Cir. 1999).  In regards to her retaliation claim, Watts maintained that she engaged in a protected activity when she informally complained to the Kroger store manager about her immediate supervisor's conduct toward her.  *Id.* at 507–08, 511.  Although Watts' suit ultimately alleged that her supervisor "made inappropriate jokes both to and about her, continually made sexual innuendos to her . . . once grabbed her buttocks [and] touched her in other ways" and called her a "homewrecker" and "homeless," Watts initially complained to the store manager that her supervisor "was making comments about her personal life and that she wanted the conduct stopped."  *Id.* at 507–08.  This complaint was found to not constitute a protected activity under Title VII because Watts did not report or allege any sexual harassment at that time, and no reasonable juror could find that such a complaint was protected by the statute.  *Id.* at 511.

A similar finding was made in *Sitar v. Indiana Department of Transportation*, 344 F.3d 720 (7th Cir. 2003).  Sitar was the only female highway maintenance worker employed in her historically all-male unit, and problems arose in the unit soon after she began working.  *Id.* at 722–23.  In one incident, Sitar accused one of her male co-workers of repeatedly paging her with the number 666, and a verbal and physical altercation between the two ensued.  *Id.* at 723.  Sitar's immediate supervisor was notified of the incident and instructed Sitar and her co-worker to apologize.  *Id.*  After the co-worker left the meeting, Sitar began to cry and complained to her supervisor that "she was 'always on pins and needles' and felt that the others 'didn't want to give [her] a chance to do [her] job,' that she was 'always in f------ trouble' and 'they didn't want [her] working there.'"  *Id.*  Sitar's complaint was found to be insufficient to constitute protected activity for a Title VII retaliation claim because it did not involve any action protected under the statute.  *Id.* at 727.  "Sitar complained only that she felt picked on, not that she was discriminated against 'because of' sex or gender, which is what Title VII requires."  *Id.*  The Seventh Circuit Court of Appeals elaborated further, stating

-12-

> [a]lthough an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protection, 'she has to at least say something to indicate her [gender] is an issue.' An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.

*Id.* (quoting Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000)). Thus, Sitar's retaliation claim based on that particular complaint to her supervisor did not survive summary judgment. *Id.* at 727–28.

*Nigro v. St. Tammany Parish Hospital* is also instructive. 377 F.Supp.2d 595 (E.D. La. 2005). Nigro, a nurse employed by St. Tammany Hospital, alleged that the hospital demoted him in retaliation for his complaints about a doctor's discussions of her gender reassignment surgery and accompanying treatment. *Id.* at 598. Nigro complained to the director of the department in which he worked, as well as the nurse manager, that he "was offended by all the talk" by the doctor, the talk "was really out of hand," he "didn't want to listen to it anymore," he was "uncomfortable" and thought the talk was "inappropriate." *Id.* at 601. Because Nigro complained to a supervisor that he had been generally offended and had not made assertions of harassment or discrimination within the scope of Title VII, the complaints did not constitute protected activity under the statute. *Id.* at 601–602.

Thus, in order for an employee's complaint to a supervisor to constitute protected activity necessary to establish a prima facie case of retaliation under the opposition clause of § 2000e-3(a), the complaint must concern, and be in opposition to, conduct made unlawful by Title VII. *See also* Watkins v. Tex. Dep't of Criminal Justice, No. 06-20843, 2008 WL 686571, at *3 (5th Cir. Mar. 12, 2008) (stating that plaintiff's belief that he was "treated unfairly because of critical comments he made to the media in January 2000 concerning prison under-funding and staff shortages. . . . are not protected activity under Title VII, and therefore cannot serve as grounds for a Title VII retaliation action"); Marquez v. Voicestream Wireless Corp., 115 Fed.Appx. 699, 702–03 (5th Cir. Nov. 24, 2004) (per curiam) (finding that plaintiff failed to establish that she engaged in a protected activity for a Title VII retaliation claim when she informed an office manager that her supervisor had invited her to go out for a drink on two occasions, but there was no evidence that "she

-13-

protested or objected that these invitations were sexual harassment or otherwise unwelcomed," and "[w]ithout an allegation that she reported unlawful activity . . . [plaintiff's] conversations with [the office manager] were not protected activity").

Based on an analysis of the foregoing and a thorough examination of Plaintiff's undisputed recitation of Farmer's conduct and Plaintiff's complaints to Ramirez made on October 29, 2003 and November 12, 2003, the Court determines that Plaintiff's attempt to establish that she engaged in a protected activity under Title VII is weaker than the plaintiffs' attempts in the cases discussed *supra*. Plaintiff did not notify Ramirez that she believed Farmer's conduct on October 28, 2003 was motivated by any type of discriminatory animus based on race, color, religion, sex, or national origin—categories that are protected by Title VII. Even upon consideration of the facts in the light most favorable to Plaintiff, Farmer's actions toward Plaintiff, although rude and unprofessional, cannot be reasonably construed to have been unlawfully discriminatory, nor can any of Plaintiff's complaints to Ramirez be construed to have notified Ramirez that Plaintiff believed she was being discriminated against on the basis of any of the categories protected by Title VII.

Thus, the Court determines that those complaints were not made in opposition to "any practice made an unlawful employment practice by" Title VII, and Plaintiff could not have held a good faith, reasonable belief that Farmer's conduct was discriminatory and that Plaintiff was opposing an unlawful practice under Title VII. 42 U.S.C. § 2000e-3(a). Indeed, not once in Plaintiff's complaint, or her three responses to the instant motion, did Plaintiff ever allege the type of Title VII-protected discrimination she was opposing in her complaints to Ramirez.

Furthermore, the Court determines that Plaintiff's reliance on *Burlington Northern* is misplaced. White, the employee in *Burlington Northern*, complained to Burlington officials that her supervisor had made gender-related discriminatory remarks to her, thereby complaining of discriminatory conduct that is made unlawful by Title VII. *Burlington Northern*, 548 U.S. at 57–58. Those actions are unlike this Plaintiff's own complaints. Moreover, Plaintiff's interpretation of *Burlington Northern's* holding is incorrect. Plaintiff maintains that "[t]he U.S. Supreme Court [in *Burlington Northern*] has now held that the issue before the court is not whether or not there was a discriminatory practice that was

-14-

being challenged but rather that of the retaliatory actions.  As a result, the Defendant's [sic] argument[—]that [because] the Plaintiff failed to complain of any animus based on sex, religion, national origin or age, her retaliation claim must fail[—is incorrect.]  The U.S. Supreme Court has held otherwise."  Dkt. No. 23, at 5 (citing *Burlington Northern*, 548 U.S. at 71–73).  This is an incorrect explanation of the case.  *Burlington Northern* addressed the disagreement among circuit courts of appeals regarding the meaning of the phrase "discriminate against" in 42 U.S.C. § 2000e-3(a).[2]  The Supreme Court examined the allegedly retaliatory actions taken by an employer against an employee who engaged in a protected activity under Title VII, and the Supreme Court specifically considered "whether the challenged [retaliatory] action has to be employment or workplace related and . . . how harmful that action must be to constitute retaliation."  *Burlington Northern*, 548 U.S. at 59–60.  Thus, *Burlington Northern* delineated the standard by which an employer's actions should be analyzed; it did not expound on the standard to be applied to an employee's actions and whether such actions constitute a protected activity under Title VII, which is Defendants' contention in the instant summary judgment inquiry.  Contrary to Plaintiff's argument, *Burlington Northern* did not eliminate the element requiring an employee's participation in a protected activity in order to establish a prima facie case of retaliation.  Indeed, subsequent to *Burlington Northern*, the Fifth Circuit Court of Appeals  has continued to examine whether a plaintiff's complaint to his employer constitutes a protected activity necessary to establish a prima facie retaliation claim.  *See Watkins*, 2008 WL 686571, at *3.

Accordingly, the Court finds that Plaintiff's complaints to Ramirez on October 29, 2003 and November 12, 2003 did not constitute engagement in protected activities under the opposition clause of 42 U.S.C. § 2000e-3(a), and these actions cannot form the bases

---

[2]"It shall be an unlawful employment practice for an employer to *discriminate against* any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a) (emphasis added).

for a prima facie case of retaliation under Title VII. Thus, the Court grants summary judgment in favor of Defendants on this particular basis.

    *ii.    Claim Under the Participation Clause of §2000e-3(a)*

    In order to establish a Title VII retaliation claim based on engaging in a protected activity under the participation clause of 42 U.S.C. §2000e-3(a), a plaintiff must have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a); Grimes v. Tex. Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996). The Court determines that Plaintiff's complaints to Ramirez on October 29th and November 12th discussed *supra* do not qualify as participation in the EEO process because Plaintiff did not engage in any type of communication with an EEO office or counselor at that time.

    It is undisputed that Plaintiff contacted an EEO counselor on December 11, 2003 to EEO counseling. Dkt. No. 20, Ex. I at 1. Although the EEO Counselor's Report indicates the "bases for alleged discrimination" as "Race/National Origin – Hispanic; Age – 54," the summary of discriminatory allegations does not include any facts concerning how or why Plaintiff believed she was discriminated against on those bases.[3] *Id.* However, Defendants do not contend that Plaintiff's December 11th communication with the counselor does not constitute protected activity under the participation clause of § 2000e-3(a). *See* Dkt. No. 20. Thus, viewing the facts in the light most favorable to Plaintiff, the Court will assume for the sake of argument that such action constituted protected activity under the participation clause of § 2000e-3(a) and may form the basis of a prima facie case of retaliation.

---

    [3]"Not all discussions with individuals who are part of the Title VII grievance process or all information complaints will amount to participation in a Title VII proceeding . . . .At a minimum there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII." *Brower*, 178 F.3d at 1006 (citing Ghane v. West, 148 F.3d 979, 982 (8th Cir. 1998)).

**B.** ***Whether Plaintiff Has Established A Causal Connection Between Her Protected Activity and Defendants' Allegedly Adverse Employment Action***

Defendants aver that Plaintiff cannot establish a causal connection between the allegedly adverse action taken against Plaintiff on November 12, 2003 and Plaintiff's only protected activity—her initial contact with an EEO Counselor on December 11, 2003—because the EEO communication occurred after the alleged adverse action. Dkt. No. 20, at 10. Thus, at the time the action was taken on November 12th, Plaintiff had not engaged in an activity against which Defendants could retaliate. Plaintiff's complaint alleges that in November 2003, she "was stripped of her responsibilities for having complained to . . . Ramirez about an incident she encountered at a test site with Helen Farmer" and "on November 12, 2003 [Ramirez] informed Plaintiff of one major change to take effect immediately." Dkt. No. 9, at 3. Although she makes other vague assertions of having job assignments removed and receiving poor evaluations in retaliation for filing an EEO complaint, the November 12th email to Plaintiff from Ramirez informing Plaintiff of the changes in how assignments are scheduled is the only allegedly adverse action taken by Defendants that has been addressed thus far.

The Court determines that Plaintiff cannot establish a retaliatory causal connection between Defendants' allegedly adverse action taken via the November 12th email and Plaintiff's initiation of the EEO process on December 11, 2003 because the action complained of by Plaintiff occurred before Plaintiff engaged in a protected activity under Title VII. Thus, Defendants' action could not have occurred in retaliation against Plaintiff's EEO communication. Henrickson v. Potter, 327 F.3d 444, 446 & n.7 (5th Cir. 2003); Williams v. Weems Cmty. Mental Health Ctr., Civ. Action No. 4:04CV179LR, 2006 WL 1666280, at *4 (S.D. Miss. June 13, 2006). Accordingly, the Court grants summary judgment in favor of Defendants on this particular ground.

Although no other acts of adverse action have been specifically alleged and addressed by Plaintiff, upon consideration of the current procedural posture of this case the Court determines that Plaintiff's general assertions of having job assignments removed and receiving poor performance evaluations shall remain as live claims in this action, to the

-17-

extent that such actions are alleged to have occurred after Plaintiff initiated contact with an EEO Counselor on December 11, 2003.

## V.     Hostile Work Environment Claim

Plaintiff's complaint indicates that she intends to assert a hostile work environment claim. Dkt. No. 9, at 4 ("Plaintiff would show that these acts constitution violation of Title VII in that they constitute a hostile work environment . . . for filing a claim with the EEO of the Office of Personnel Management."). However, Defendants' motion for summary judgment does not address this claim. Accordingly, the Court determines that a request for summary judgment on Plaintiff's hostile work environment claim is not presently before the Court.

## VI.     Conclusion

The Court determines that Plaintiff has failed to establish: (1) that her complaints communicated to her supervisor on October 29, 2003 and November 12, 2003 constitute protected activities under Title VII; and (2) the existence of a retaliatory causal connection between allegedly adverse actions taken by Defendants against Plaintiff on November 12, 2003 and Plaintiff's communication with an EEO counselor on December 11, 2003. Therefore, the Court concludes that Plaintiff cannot establish a prima facie case of retaliation under Title VII based on these allegations. *See supra* §§ IV.A.i, IV.B. Accordingly, the Court **GRANTS IN PART** Defendants' Motion and Memorandum in Support for Summary Judgment in accordance with these findings. Dkt. No. 20.

The Court **DENIES IN PART** Defendants' motion as it pertains to a request to grant summary judgment in its favor as to all claims in this matter.

Thus, the claims remaining in this matter are (1) Plaintiff's claim of a hostile work environment, and (2) any claims of retaliation based on allegedly adverse conduct that occurred after December 11, 2003. *See supra* §§ IV.B, V.

DONE at Brownsville, Texas on August 1, 2008.

Hilda G. Tagle
United States District Judge

-18-